[Civ. No. 28537. Second Dist., Div. Two. Mar. 22, 1965.]

Estate of JESSIE LOU GIBSON, Deceased. ANDREW MILLER, Petitioner and Appellant, v. JAMES MICHAEL GIBSON, Objector and Respondent.

Pray, Price, Williams & Deatherage and William C. Price for Petitioner and Appellant.

Eric A. Rose for Objector and Respondent.

FOX, J.*—Upon the death of Jessie Lou Gibson, her father, Andrew Miller, filed a petition for letters of administration of his daughter's estate. A few days later James Michael Gibson, surviving spouse, filed his petition for letters of administration of his deceased wife's estate. Both petitions were heard together. After submission the court on February 11, 1963, granted the petition of the father, Andrew Miller, and denied Gibson's petition because at that time he was not yet 21 years of age. Miller took the required oath on February 16. He filed the required bond on March 8, 1963, and letters of administration were issued to him on that date. On February 18, 1963, Gibson filed his notice of appeal. On November 15, 1963, this court reversed the order holding, in effect, that under Civil Code section 25 Gibson was an adult for the purposes of administering the estate of his deceased wife and that under Probate Code section 422, subdivision (1) he had priority to administer his deceased wife's estate over her father; that the court therefore should have granted Gibson's petition and denied Miller's petition. (See *Estate of Gibson,* 222 Cal.App.2d 299 [35 Cal.Rptr. 103].)[1]

The record in the instant appeal reveals that Miller proceeded with the settlement of the estate as if nothing had happened. He approved and paid the claims that were filed, paid the funeral expenses and other expenses incident to decedent's last illness and the administration of the estate, and disposed of her automobile. All of these acts were performed by him after the notice of appeal herein was filed on February 18, 1963. None of the claims were approved by the

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] Through inadvertence the court stated in the prior case that the appeal therein was taken by the husband of the deceased from an order denying his petition for letters of administration by reason of the fact that he was at the time of filing the petition under the age of 21. This was the basic question involved in that appeal. The notice of appeal, however, stated that the appeal was from the order appointing Andrew Miller administrator. The decision on the appeal reads "The order is reversed." It is quite apparent that this inadvertence is wholly unimportant.

court, however, until after the opinion in the former appeal was filed on November 15, 1963.

On January 3, 1964, Miller, as administrator, filed his "First and Final Account, Report of Administrator[2] and Petition for Distribution" in which he claimed "as Administrator" credit for $205.10 paid to Pray, Price, Williams & Deatherage as statutory attorneys' fees on December 15, 1963, and the same amount of $205.10 as statutory administrator's commissions paid on December 15, 1963. On February 5, 1964, Miller filed a supplement to his first and final account claiming as an additional item of disbursement the sum of $125 claimed by the respondent herein as his costs of appeal from Miller individually, who was respondent in the prior appeal.

Following a hearing on the administrator's first and final account and petition for distribution and the supplement thereto and the opposition filed by respondent Gibson, the court on February 21, 1964, made the following order: "Executor is surcharged for attorney fees, admin. fees, and costs on appeal. As thus modified, the estate is ordered distributed." It is from this order that petitioner Miller has appealed.

This brings us to the precise questions that we are called upon to decide on this appeal: (1) whether Miller, as the initially appointed administrator of the estate of decedent, and his counsel are, respectively, entitled to receive from the estate the statutory fees for their respective services in the administration of this estate; and (2) whether Gibson is entitled to recover his costs on the prior appeal from Miller personally, or is such expense to be charged against the estate?

An appeal from an order appointing a general administrator suspends his powers and stays proceedings in the court below. (*Estate of Hultin,* 29 Cal.2d 825, 833 [178 P.2d 756]; *Estate of Schwartz,* 87 Cal.App.2d 569, 573 [197 P.2d 223].) In the latter case the court stated "It is the appeal taken from the order appointing respondent as administratrix with the will annexed that suspended her powers and stayed proceedings in the court below."

In the instant case the administrator did not perform any acts in the administration of the estate between the date of

---

[2]The first and final account and report of Miller covers the period from March 8, 1963, the date on which he qualified as administrator, to and including December 18, 1963. It shows that the car was disposed of on April 1. The inventory and appraisement was filed on December 11, 1963.

his appointment on February 11, 1963 (he did not qualify until March 8) and the filing by respondent on February 18 of his notice of appeal challenging the validity of Miller's appointment. Thus, all of the acts in the administration of the estate were performed after the administrator's powers were suspended and the proceedings stayed in the probate court. (*Estate of Hultin, supra.*) This brings our case into focus with the *Estate of Schwartz, supra,* and makes the principles there stated and the decision of that case here apposite. In *Schwartz,* the widow and the son of the testator each filed a petition for appointment as administrator with the will annexed. From an order granting letters of administration to the widow and from a further order denying the son's petition, the latter appealed. The court reversed the order appointing the widow. During the pendency of the appeal, the widow continued to act in the capacity to which she had been appointed by the probate court. After the remittitur was lodged in the court below, the widow filed her "first and final account, report of administratrix with will annexed, petition for fees of administration and her attorneys, and allowance of costs, instructions and discharge." The court held, relying on *Estate of Hultin,* 29 Cal.2d 825 [178 P.2d 756], that after the filing of the notice of appeal, all steps taken by the administratrix "are without authority" since the filing of the notice of appeal "suspended her powers and stayed proceedings in the court below." (P. 573.) The court, therefore, disallowed the administratrix any commissions for her services or any fees for her attorneys for services performed by either after the filing of the notice of appeal challenging her appointment.

This is the precise situation that is presented in the instant case. All of the acts of administration by Miller were performed after Gibson filed his notice of appeal which had the effect of suspending Miller's powers and staying the proceedings in the court below. It, therefore, follows that the court correctly held that Miller was not entitled to commissions for his services as administrator, nor fees for his attorneys. The probate court properly surcharged him with these items.

The *Schwartz* case also provides a definitive answer as to the party responsible for Gibson's costs on the prior appeal. The court stated (p. 575) ". . . it is manifest that the court erroneously charged against the estate the costs incurred by appellant in successfully prosecuting the former appeal from

the order appointing respondent as administratrix with the will annexed. As heretofore pointed out, the controversy embodied in the appeal was purely a personal one in which the estate was not interested or benefited. The costs expended by appellant as the prevailing party on that appeal should therefore be taxed against respondent individually and not against the assets of the estate.'' So, in the instant case, the taxable costs expended by Gibson as the prevailing party on that appeal should not be taxed against the assets of the estate but against Miller individually. The trial court, therefore, properly surcharged the administrator with the additional item of $125 representing Gibson's taxable costs on the prior appeal.

We find no merit in the administrator's contentions: (1) that he should be allowed the statutory commissions and fees for his counsel since they had completed the administration of the estate, otherwise the estate would be unjustly enriched at their expense; and (2) that he (Miller) should not be taxed personally with Gibson's costs on the prior appeal because he took no part in that appeal.

In making his argument on the first point, the administrator overlooks the fact, which he presumptively knew, that upon the filing by Gibson of his notice of appeal, his (Miller's) powers as administrator were suspended; and that, upon the filing of the opinion in the prior appeal, he had actual knowledge that his appointment was invalid and that his occupancy of the office of administrator was without legal sanction. Yet, it was during these periods that the administrator and his counsel performed the acts for which they now seek compensation. They knew the hazard of their position but nevertheless continued to go forward to the conclusion of the administration of the estate notwithstanding the decision on the prior appeal that the administrator was erroneously appointed, and consequently had no legal authority to act as such.[3] To hold, in these circumstances, that the administrator and his counsel were entitled to receive compensation for what they had done in administering the estate would be to reward them for services they had no authority to perform. This would tend to encourage others to hold onto an estate and to continue its administration even though the

---

[3] If an emergency or other circumstance had arisen requiring someone with authority to act on behalf of the estate, a special administrator could have been appointed upon a proper showing. (*Estate of Hultin*, 29 Cal.2d 825, 833 [178 P.2d 756].)

authority therefor had ceased. This would not be in the interest of the orderly administration of estates.

The administrator, in connection with the second of his contentions mentioned above, fails to take into account the fact that it was his petition for appointment as administrator of the decedent's estate and his advocacy thereof before the probate court and his opposition to Gibson's appointment as such administrator that was responsible for his (Miller's) erroneous appointment. This made it necessary for Gibson to appeal from the order appointing Miller administrator, if he was going to continue to assert and vindicate his right to that appointment. Having been responsible for his erroneous appointment Miller cannot, simply by failing to participate in the appeal by Gibson to correct that error, escape responsibility for the taxable costs of appellant on that appeal.

■ Appellant's reliance on Probate Code section 1241[4] in support of his thesis that the probate court erred in not allowing him statutory commissions and attorneys' fees and in surcharging him individually with Gibson's taxable costs on the prior appeal, is misplaced. It will be observed that this code section does not undertake to deal with the questions here at hand. Its purpose, *inter alia,* is to protect third persons in their dealings in estate matters with an executor or administrator whose appointment is later reversed.

The order is affirmed.

Roth, P. J., and Herndon, J., concurred.

---

[4]Section 1241 Probate Code reads as follows: ''Where an order appointing an executor or administrator is reversed on appeal for error, all lawful acts in administration upon the estate theretofore performed by such executor or administrator after he has qualified are as valid as though the order were affirmed.''